```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )  No. 3:18-cr-00319-JO-02
                             )
     v.                      )
                             )
EARL DEVERLE FISHER,         )  July 18, 2018
                             )
          Defendant.         )  Portland, Oregon
_____)
```

**Review of Detention Hearing**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE JOHN V. ACOSTA

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

|   |                    |                                                                                                  |
|---|--------------------|--------------------------------------------------------------------------------------------------|
| 1 |                    |                                                                                                  |
| 2 |                    | APPEARANCES                                                                                      |
| 3 |                    |                                                                                                  |
| 4 | FOR THE PLAINTIFF: | Ms. Leah K. Bolstad                                                                              |
|   |                    | United States Attorney's Office                                                                  |
| 5 |                    | 1000 S.W. Third Avenue, Suite 600                                                                |
|   |                    | Portland, OR 97204                                                                               |
| 6 |                    |                                                                                                  |
| 7 |                    |                                                                                                  |
| 8 | FOR THE DEFENDANT: | Mr. Ernest Warren, Jr.                                                                           |
|   |                    | Warren & Sugarman                                                                                |
| 9 |                    | 838 S.W. First Avenue, Suite 500                                                                 |
|   |                    | Portland, OR 97204                                                                               |
|10 |                    |                                                                                                  |
|11 |                    |                                                                                                  |
|12 | COURT REPORTER:    | Bonita J. Shumway, CSR, RMR, CRR                                                                 |
|   |                    | United States District Courthouse                                                                |
|13 |                    | 1000 S.W. Third Ave., Room 301                                                                   |
|   |                    | Portland, OR  97204                                                                              |
|14 |                    | (503) 326-8188                                                                                   |

```
 1                    (P R O C E E D I N G S)
 2                   (July 18, 2018; 2:21 p.m.)
 3            THE COURT:  Mr. Warren, do you need time before we
 4   start?
 5            MR. WARREN:  No, I'm ready to go.
 6            THE COURT:  Thank you.
 7            Mr. Warren, the government filed a written response
 8   to your memo and declaration.  Have you had a chance to read
 9   that?
10            MR. WARREN:  I have, Your Honor.  To supplement our
11   argument today, I've handed up a copy of the document.  I've
12   already given a copy to the government.
13            If I may approach, I'll be referring to this document
14   for part of my argument today.  (Handing.)
15            THE COURT:  Thank you.
16            MR. WARREN:  We're ready to proceed, Your Honor.
17            THE COURT:  All right.  Ms. Bolstad, call the case,
18   please.
19            MS. BOLSTAD:  Thank you, Your Honor.
20            The next matter on the docket is United States v.
21   Earl Fisher, Case No. 18-cr-319-02, assigned to Judge Jones,
22   United States v. Earl Fisher.  Mr. Fisher is present.  He's in
23   custody.  He's represented by counsel, Mr. Warren.
24            He's already made his initial appearance on this
25   matter, but we're here today on the defense motion for release.
```

1  And the government opposes that motion.  We agree with the
2  Pretrial Services Office in recommending detention because
3  there are no conditions or combination of conditions that could
4  ensure the safety of the community or defendant's appearance in
5  court.
6           I'm happy to address any concerns the Court might
7  have.
8           THE COURT:  Thank you.
9           Mr. Warren, I've read your document as well, your --
10 both your motion and your declaration.
11          MR. WARREN:  Thank you, Your Honor.
12          THE COURT:  I'm looking at the material that you
13 handed up to the Court just a few moments ago.  It has to do
14 with a state court matter that apparently was assigned to Judge
15 Dailey --
16          MR. WARREN:  That's correct.
17          THE COURT:  -- of Multnomah County.
18          MR. WARREN:  Yes.  Maybe I can give it some context.
19          THE COURT:  Sure.
20          MR. WARREN:  First of all, one of the things that has
21 to be proven under 18 U.S.C. Section 3142(f) by clear and
22 convincing evidence is that my client is a danger to the
23 community.  The government must show not just that the
24 defendant poses a danger but he is truly a danger.
25          Based on the information that the U.S. Pretrial

1  Services has given, information that is in my memo, and
2  information that's been provided, certainly that's not met.
3         My client has no prior felony convictions.  His --
4  the bulk of his convictions are all misdemeanor driving
5  convictions.  He does have one 20-year-old -- 23-year-old
6  misdemeanor assault conviction.
7         One of the things -- the reason why I give you this
8  judgment from Judge Dailey, one of the things was it was an
9  unlawful use of a weapon charge.  During that case, what
10 happened was Mr. Fisher talked to the mother -- or the father
11 of his daughter's children about being rough with his daughter.
12 He got his throat cut because of that, and basically that's
13 what that charge was about.  He got probation from that charge
14 and he was terminated two years earlier.  So any indication by
15 the government or Pretrial that he's a problem being supervised
16 would be ill-advised, because he had five years of probation
17 and he was terminated two years early.
18        The other thing that we saw and was alleged in the
19 indictment that was handed to the Court was that one of the
20 names of the so-called bike gangs was Solution Motorcycle Club.
21 Well, Solution Motorcycle Club, nonprofit, is also attached to
22 those documents that was presented to Judge Dailey that allowed
23 him to get off two years early, and the reason is, this is a
24 Multnomah County Probation Office-verified community service NA
25 and AA club.  So this is a motorcycle club for clean and sober

1   folks.  And he did so many hours of community service there
2   that this was part of the basis for the reason why he was let
3   off of probation two years early.
4          Also, I think I handed you, to authenticate it, a
5   Close Street Supervision request, and Close Street is -- at the
6   time was the agency that allowed people to be out on pretrial
7   release when they were pending charges in Multnomah County.
8          And it says there, the nature of the current offense
9   for which Mr. Fisher pled guilty, it says according to PPD
10  records -- Portland Police Bureau -- Fisher allegedly went to
11  the victim's home to confront them about his daughter being out
12  too late and having her kids at home with a babysitter.  Once
13  at that home, the victim says Fisher kicked in his door --
14  that's not what he was convicted for -- and then the struggle
15  ensued and he was stabbed in the neck.
16         Okay.  So basically, you know, that's what that case
17  is all about.  Other than that, he has no prior violent crimes,
18  felonies, and we're talking about misdemeanors that
19  predominantly are 20 years old.
20         He's willing to use a bracelet monitor.  He would
21  check in with U.S. Pretrial daily.  He can do that.  His family
22  is in the courtroom right here lined up with their hands up.
23         They're over there.  I didn't know that.  I knew
24  about these (indicating).
25         So, you know, he has a courtroom full of support that

would get him to court.

This case, this very case has been going on for two and a half years in state court. The reason we didn't address release at that time is because of the court procedures over there, they had not dismissed the charges in state court yet, so there would have been a hold on him had we tried to pursue release at that particular time.

Next, if we could go to the issue of flight risk. He's lived in Portland for 49 years. He's never lived anywhere else. He's a homeowner for ten years. His wife and their three grandkids live with him.

In 2007, as it says -- it's a little bit fuzzy, but I have the medical records here to authenticate it and I have not provided them to U.S. Pretrial yet. When he was working as a roofer, he fell off a roof with his utility belt on and he broke his back in two places. He lost his kidney. He lost an eye, and he suffered -- and he suffered traumatic brain injury, all this from fall. Since that time in 2007, he's been on Social Security Disability.

One of the problems that we have right now is that the U.S. Marshals Service has him at Columbia County. As soon as I heard, the day after he was arraigned in front of Your Honor, he was transferred the next day, and so I wrote to the U.S. Marshal and told them, look, they can't deal with his medical issues at Columbia County. Presently at Columbia

1   County, he doesn't get his -- he doesn't get his Neurontin
2   medication, he doesn't get Tylenol, and they took his
3   prosthetic back brace, and he's in excruciating pain because of
4   that, which these same things were provided at MCDC.
5           What the U.S. Marshal told me was this is up to the
6   government, Ms. Bolstad, so I contacted Ms. Bolstad about this.
7   And I knew that wasn't true, but I did, and I said, would you
8   please at least have him here at MCDC, maybe switch him out for
9   somebody that can go to Columbia County that doesn't have his
10  health issues, that doesn't have only one kidney, a fractured
11  back, and doesn't get his medication.
12          And so that's another problem.  At least if he was
13  released to his home, he would get all of these things that he
14  would need.
15          So summing it up, Your Honor, there's no proof that
16  he is a threat to the government.  We do have a presumption of
17  innocent on these charges.  How the government says that the
18  bike gang that he's a part of is some bad organization, I don't
19  know, but we'll figure that out.  Not here.  And he's not a
20  flight risk.
21          So we'll do any combination to get him out.  He will
22  put his house up on bond if he has to.  Whatever it takes, we
23  want him out if possible.
24          Thank you, Your Honor.
25          He just wanted me to say that he would come twice a

1  day to see Pretrial if needed to.  Thank you.
2              THE COURT:  Thank you.
3              Ms. Bolstad, go ahead, please.
4              MS. BOLSTAD:  Thank you, Your Honor.
5              I think defense counsel got to the right place at the
6  end with the clarification that he does have a prior violent
7  felony.  At the beginning I heard Mr. Warren say that the
8  defendant has no felony convictions, and that's simply not
9  true.  The document he handed you is a felony conviction in
10 2010 for unlawful use of a weapon.  It's a Class C felony.
11 That's a case in which he was also charged with other crimes
12 like Burglary 1, an Attempt Assault 1.  And that is correct,
13 it's from an incident in which defendant kicked the door in to
14 the victim's home.  We don't need to relitigate that prior
15 case.  He's already been convicted of the violent offense.
16             Also in the pretrial report, I count 11 failures to
17 appear over his lengthy criminal history that dates back to
18 1989.  I count ten probation violations.  Those two facts are
19 important, in addition to a third fact:  He has at least seven
20 revocations of supervision, meaning a probation officer got to
21 the point of saying, I cannot supervise this person, and
22 recommending that he be revoked from supervision.
23             So those three factors are really important to this
24 Court's determination about whether there are conditions that
25 this Court can put into place to assure his appearance in court

1  and the safety of the community.
2          He's got that violent prior conviction.  He also has
3  several arrests for Assault 4, one of which he was convicted
4  of, but three arrests total.  And, of course, he's got this
5  case, where he's charged with very serious offenses of
6  kidnapping and murder.  And as I wrote in my detention memo,
7  the specific special factual findings alleged in that
8  indictment say that Mr. Fisher was involved in intentionally
9  killing the victim.  It's pretty rare to see that kind of
10 offense in federal court.  It's an offense that triggers the
11 highest federal penalties that we have.
12         Because of that fact and the risk to the community,
13 and especially the victims that we have in this case, the
14 witnesses who have testified, the witnesses that he's aware
15 of -- because he's been pending this same crime for two years
16 in Multnomah County custody -- we have serious concerns with
17 obstruction, witness tampering, and retaliation against
18 witnesses.  And that's one of the factors in the Bail Reform
19 Act that should be of concern to the Court.
20         The indictment contains allegations about the
21 enterprise of which he belongs as a vice president.  That's the
22 Gypsy Joker Outlaw Motorcycle Club.  The manner and means of
23 that enterprise is to scare people, scare people from
24 testifying in court, to scare people from following through
25 with police reports where they allege things like assault.  So

1  it's very unsurprising to the government that some of his
2  crimes went away in the past.  This man is a long-term member
3  of the Gypsy Jokers.  He does pose a danger to the community.
4           He is a flight risk because he's facing the most
5  serious penalties he's ever faced in his life.  If convicted of
6  these offenses, he's facing either a sentence of life
7  imprisonment or death.  That exposure gives him a huge
8  incentive to flee, so we'd ask the Court to detain him.
9           We agree with the Pretrial report.  Pretrial is
10 recommending detention.  The government is recommending
11 detention.
12          I'm happy to answer any questions you may have.
13          THE COURT:  Thank you.
14          Mr. Warren, anything else?
15          MR. WARREN:  No, Your Honor, other than there's been
16 no threats to witnesses in two and a half years as we've
17 been -- we were ready for trial with this particular case.  The
18 case that -- the charge that she says is a violent charge is
19 not recognized in federal court as a violent charge.  UUW is
20 not a violent charge.
21          He was put on probation and then probation was
22 terminated two years early just a few years ago because of his
23 good conduct.
24          So that's all I have to say about it.
25          THE COURT:  Thank you.

```
 1            I've read the motion for release and the declaration
 2   in support of that motion that the defendant filed, and the
 3   government's response, which was filed earlier today.  I've
 4   also read the Pretrial Services report regarding this
 5   defendant, which addresses, as pretrial reports typically do,
 6   all of the factors that the Court must consider under the Bail
 7   Reform Act in determining whether to detain or release a
 8   defendant.  One of those factors, among the many others to
 9   consider, is, of course, the defendant's prior criminal
10   history.
11            All right.  The charges in this case are very
12   serious, probably of all of the charges the Court ever sees
13   during criminal matters, the most serious charge, which
14   includes murder and kidnapping with the result of death.
15            The defendant's criminal history is extensive and it
16   begins in 1989.  Its consistency throughout the years shows
17   that there is very few gaps in the yearly chronology in which
18   the defendant is arrested and convicted or arrested and the
19   charges are dismissed or probation is imposed.
20            Ms. Bolstad correctly points out that the defendant
21   has multiple failures to appear, multiple probation violations,
22   and certainly several if not a handful of revocations of
23   probation in the past.
24            I'll address one particular point that has come up
25   twice now in Mr. Fisher's case, once at the initial appearance
```

1  and again today with respect to his release and the
2  representation that he would not be a threat to individuals.
3           In Docket No. 22, which is Mr. Warren's declaration
4  in support of Mr. Fisher's motion for release, paragraph 4,
5  which begins at the bottom of page 1 states:  "There is no risk
6  that Mr. Fisher will obstruct or attempt to obstruct justice or
7  threaten, injure, or intimidate, or attempt to threaten,
8  injure, or intimidate a prospective witness or juror.
9  Mr. Fisher suffers health conditions that seriously limit his
10 mobility.  In 2007, he fell off a roof and fractured his back."
11 Apparently there were some serious consequences from that fall
12 in 2007.
13          In contrast, the documents that were provided to the
14 Court today by the defendant, as well as the pretrial report
15 criminal history shows that, as Mr. Warren pointed out, three
16 years later -- or two years later, Mr. Fisher felt in
17 sufficiently good condition to confront his son-in-law about
18 the manner in which he believed his son-in-law was behaving
19 physically toward his daughter.  There doesn't seem to be any
20 repetition of the history of that incident in which, among
21 other things, he kicked in the door.
22          If he kicked in the door, and more importantly, if he
23 felt sufficiently capable physically of confronting his
24 son-in-law about the treatment of his daughter, it seems to me
25 that the defendant is of a mind that he is sufficiently capable

1  of confronting other people in other ways about the allegations
2  in this case, particularly those who might be or are suspected
3  to be witnesses in the conduct against him.
4         The allegations are very serious.  I've read the
5  allegations.  I'm familiar with the case.  And the threat, if
6  convicted, of a life sentence or death if convicted is a
7  sufficient motivation to cause a defendant to flee.
8         As we know under the Bail Reform Act, it is not
9  fleeing the jurisdiction that the Court must consider, it is
10 the defendant's willingness to appear for court appearances.
11 And as we know in the past, based on the history of other cases
12 in which a defendant has been a flight risk or proven to be a
13 flight risk, defendants can hide themselves within the
14 jurisdiction for many months, if not longer, at a time without
15 being found.
16        On balance, I find that under the factors I must
17 consider under the Bail Reform Act, Mr. Fisher is a flight risk
18 and a danger to the community.
19        Mr. Warren, that is without prejudice for you to seek
20 a review of detention at a later time if there is additional
21 new information that you can present to the Court in support of
22 a release request.
23        MR. WARREN:  Thank you, Your Honor.
24        THE COURT:  Thank you.
25        (Proceedings concluded at 2:40 p.m.)

```
 1
 2                            --o0o--
 3
 4         I certify, by signing below, that the foregoing is a
 5   correct transcript of the record of proceedings in the
 6   above-entitled cause.  A transcript without an original
 7   signature or conformed signature is not certified.
 8
 9
     /s/Bonita J. Shumway                    August 16, 2018
10   _____     _____
     BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
11   Official Court Reporter
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```