1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF OREGON

3    PORTLAND DIVISION

4

5   UNITED STATES OF AMERICA,        )
                                     )
6                      Plaintiff,    )   No. 3:18-cr-00319-JO-2
                                     )
7              vs.                   )   June 27, 2019
                                     )
8   EARL D. FISHER,                  )   Portland, Oregon
                                     )
9   _____ Defendant.   )

10

11

12

13              TRANSCRIPT OF PROCEEDINGS

14                   (Entry of Plea)

15

16        BEFORE THE HONORABLE ROBERT E. JONES

17       UNITED STATES DISTRICT COURT SENIOR JUDGE

18

19

20

21

22

23  Court Reporter:        Ryan White, RMR, CRR, CSR/CCR
                           United States District Courthouse
24                         1000 SW 3rd Avenue, Room 301
                           Portland, Oregon 97204
25                         (503) 326-8184

```
 1                        APPEARANCES

 2

 3   For the Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                             By:  STEVEN T. MYGRANT
 4                           steven.mygrant@usdoj.gov
                             1000 SW 3rd Avenue, Suite 600
 5                           Portland, Oregon 97204
                             (503) 727-1052
 6

 7   For the Defendant:      WARREN & SUGARMAN
                             By:  ERNEST WARREN, JR.
 8                           e.warren@warrenpdxlaw.com
                             838 SW 1st Avenue, Suite 500
 9                           Portland, Oregon 97204
                             (503) 228-6655
10
                             DEBORAH S. BURDZIK
11                           Attorney at Law
                             burdzik@burdziklaw.com
12                           1906 SW Madison Street, Suite 101
                             Portland, Oregon 97205
13                           (503) 221-0520

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  (June 27, 2019; 9:46 a.m.)

 2

 3                       P R O C E E D I N G S

 4

 5            THE COURT:  Have a seat, everybody.

 6            Please announce the case, Counsel.

 7            MR. MYGRANT:  Thank you, Your Honor.

 8            This is Steve Mygrant on behalf of the government.

 9   This is the United States versus Earl Fisher.  For the record,

10   it's 3:18- --

11            THE COURT:  Becky?

12            Just a moment.

13            Go ahead.

14            MR. MYGRANT:  Your Honor, this is United States versus

15   Earl Fisher.  It's 3:18-cr-00319.  He is in custody of the

16   United States Marshals.  He's accompanied by counsel,

17   Ms. Burdzik and Mr. Warren.

18            Steve Mygrant on behalf of the government.  This is

19   the time and place set for a change of plea, Your Honor.

20   Defendant is prepared at this time to plead guilty to count 1 of

21   the superseding indictment charging him with conspiracy to

22   commit racketeering in violation of 18 United States Code

23   Section 1962(d).

24            Defendant will also admit the forfeiture allegation

25   which is pled in the superseding indictment.  It involves a
```

clubhouse of this criminal enterprise referred to as the Salem

clubhouse.  He will disavow any personal ownership or interest

that he may -- would like to claim in that particular piece of

property.  I don't believe he has any personal interest, but as

part of this criminal plea, he's acknowledging that there is a

legal basis to move forward with the forfeiture and disavowing

himself of any ownership interest.

I believe we're prepared to proceed, put the defendant

under oath.

THE COURT:  I'm prepared.

MR. MYGRANT:  Thank you, Your Honor.

THE COURT:  Thank you.

Would the defendant please stand.

MR. WARREN:  Yes, Your Honor.


EARL D. FISHER,

having been first duly sworn or affirmed, was examined and

testified as follows:


THE COURT:  We're going to go through quite a

procedure here, so you can just sit down --

THE DEFENDANT:  Okay.

THE COURT:  -- with your lawyer -- lawyers.

Will you please introduce yourself, Mr. Warren, and

your associate.

1         MR. WARREN: Yes, Your Honor. Ernest Warren. I'm the

2 attorney for Earl Fisher, and with me is learned counsel,

3 Deborah Burdzik.

4         THE COURT: Thank you.

5         Now I'll address you, Mr. Fisher.

6         I see that you're in custody, and I assume that your

7 mind is clear today and that you have not had any substances

8 that affect your judgment. Is that correct?

9         THE DEFENDANT: No, sir, Your Honor. I'm good.

10         THE COURT: You mean --

11         THE DEFENDANT: Yes.

12         THE COURT: That's kind of a double negative.

13     (Simultaneous crosstalk.)

14         THE DEFENDANT: Yes, I'm of clear mind.

15         THE COURT: Have you had anything to affect your

16 judgment? Yes or no.

17         THE DEFENDANT: No, sir.

18         THE COURT: Are you satisfied with your lawyers?

19         THE DEFENDANT: Yes, sir.

20         THE COURT: All right. And we'll explain to you what

21 you're going to plead guilty to here, it's quite complicated,

22 and then we'll establish the factual basis for your plea.

23         I understand you have a plea agreement to plead to the

24 charges that we're going to go through, and that -- you're going

25 somewhere?

1          THE CLERK:  I'm just grabbing my notes.

2          Thank you.

3          THE COURT:  -- and that your agreement is for the

4   government to go to the bottom of the guidelines that are

5   available.

6          This penalty carries up to life imprisonment and

7   supervised release for an extended period of time, and $100 fee

8   assessment, which is minor, but the other part is not.

9          I understand you have a criminal history of 3, and

10  with the guidelines, you're looking at about 30 years

11  imprisonment.

12         So you've got a lot at stake here to make sure you

13  understand and that we all know what you're doing so that you

14  wouldn't have any right to -- any reason to have any appeals of

15  any nature.  Do you understand that?  Other than incompetency of

16  counsel, and that's not going to happen.

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.  So first of all,

19  the -- there's no pressure put on you to enter this plea.  You

20  don't have to prove your innocence.  The government has the sole

21  burden of proof to prove beyond a reasonable doubt the material

22  elements of the offense, either if you're trying the case to me,

23  I'd have to be satisfied, but if you went to trial, you'd

24  probably have a jury of 12 and each juror would have to be

25  convinced beyond a reasonable doubt of all -- each of the

elements of this offense beyond a reasonable doubt.

Now, if you went to trial, as I said, you wouldn't have to do anything, but you would have the power of the court to produce evidence and witnesses on your behalf. You would have the right to have your lawyer at all stages of the proceedings. You'd have the right to confront any witnesses who testify against you and have your lawyers examine those witnesses or you could do so yourself.

You could take the witness stand if you wanted to tell your side of things. But if you chose not to, no inference of guilt could be drawn from that decision. So you wouldn't have to incriminate yourself in any way.

And you're waiving all those valued constitutional rights and trial rights. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you waive them?

THE DEFENDANT: Yes, sir. I do.

THE COURT: Now, as far as the racketeering charge is concerned, I'm going to put the government to work here this morning, if you will.

If you'll slowly and clearly read the charge to the defendant at this time.

You can just be seated.

MR. MYGRANT: Your Honor, the charge alleged in count 1 is conspiracy to commit racketeering in violation of

18 USC 1962(d).

The elements of that offense are outlined in the plea agreement, and for purposes of this hearing, the first element is the charged enterprise, which is the Gypsy Joker Outlaw Motorcycle Club, existed or was established; second, that this enterprise or its activities affected interstate and foreign commerce; third, that the defendant knowingly agreed that either he or another person would be associated with the enterprise; and finally, fourth, that the defendant knowingly agreed that either he or another person would conduct or participate directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Those are the elements that the government would be required to prove beyond a reasonable doubt at trial.

I'll go through the factual basis of each of those elements, Your Honor --

THE COURT: Thank you.

MR. MYGRANT: -- which are also outlined in the plea agreement, and defendant admits the following facts are true, and if this matter were to proceed to trial, the government would prove the following facts beyond a reasonable doubt:

From at least or on or about January 1, 2008, through on or about October 1st, 2018, the Gypsy Joker Outlaw Motorcycle Club was an outlaw motorcycle organization comprised of individual chapters located in cities throughout Oregon and

Washington.  Each chapter included officers and general members,
all of whom fell under the leadership of the national president
and officers.

Associates and members followed a written code of
conduct which identified Gypsy Jokers as a one-percent club, or
an outlaw motorcycle club.  As such, the Gypsy Jokers were an
enterprise as defined by federal statute comprised of a group of
individuals who associated together for common purposes.

The purposes of the enterprise included the following:
One, preserving and protecting the power, territory, and profits
of the enterprise through the use of intimidation, violence,
threats of violence, assaults, and murder; two, enriching the
members and associates of the enterprise through, among other
things, extortion, robbery, and distribution of narcotics;
three, keeping victims, potential victims, potential witnesses,
and community members in fear of the enterprise and in fear of
its members and associates through threats of violence and
actual violence; next, extorting money from other motorcycle
organizations through fear and threats of violence; and,
finally, providing assistance to other members and associates
who committed crimes for and on behalf of the enterprise and
providing assistance to other enterprise members and associates
in order to hinder, obstruct, prevent law enforcement officers
from identifying offenders, apprehending the offenders, and
trying to punish the offenders.  That is the first -- the facts

that would support the first element of the offense.

The next offense element is that the Gypsy Jokers engaged in foreign interstate commerce. Gypsy Joker members in Oregon and Washington paid dues to their local chapters, a percentage of which went to the national organization. Gypsy Jokers communicated and associated with support member clubs, collected dues from support clubs in order to maintain a hierarchy, and maintain rules and discipline within the gang. The gang traveled interstate as an enterprise to commit racketeering acts including transportation and receipt of stolen motorcycles, kidnapping, and narcotics trafficking.

In regards to the third element, Your Honor, at all times relevant to this indictment, Defendant Earl Fisher was a member of the Gypsy Jokers. He knew of the nature of the enterprise's activities, including acts of violence, murder, robbery, kidnapping, and obstruction of justice.

At all times relevant to this indictment, Mr. Fisher conspired with others and agreed to conduct and participate, and did conduct and participate directly and indirectly in the conduct of the affairs of the Gypsy Joker enterprise through a pattern of racketeering activity consisting of acts involving murder -- and these are all in violation of Oregon revised statute and Washington revised statute -- murder, kidnapping, robbery, extortion, drug trafficking, and tampering with witnesses, victims, or informants.

1          Finally, Your Honor, in regards to the fourth element,

2    Defendant Fisher agreed that he or a co-conspirator would commit

3    at least two or more acts of racketeering activity in the

4    conduct of the affairs of the Gypsy Joker Outlaw Motorcycle

5    Club.

6          THE COURT:  Thank you.

7          Do you confess to the accuracy of the factual basis?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Of your own free will, how do

10   you plead to these charges?

11         THE DEFENDANT:  I plead guilty.

12         THE COURT:  I'll accept the plea as a full and

13   voluntary plea and order a presentence report for next year.

14         What time, Becky?

15         THE CLERK:  Mr. Mygrant was going to let me know when

16   he wanted to have the sentencing.

17         MR. MYGRANT:  I think we could pick a placeholder date

18   in late 2019 with the acceptance of Counsel.  That may very well

19   and will likely move, but it will keep us on track to at least

20   have dates to work up against.

21         THE COURT:  What time is our next status conference

22   for the others?

23         MR. MYGRANT:  It's next week.

24         THE COURT:  All right.  Well, we'll realistically set

25   it in December.

1       MR. MYGRANT:  I think that would be fine, Your Honor.

2       THE COURT:  Pick a date, Becky.

3       THE CLERK:  We'll say December 10th at 10:00 a.m.

4       THE COURT:  Fine.  That's fine.

5       We'll be preparing a presentence report.  It's in your

6  best interest to cooperate with it so that I get the actual word

7  about you and your background.

8       You have to understand that the guidelines are

9  advisory only, that I make the final call.  But if I do -- if

10  you do have a plea agreement and I stick with it, then there

11  will be no appeal.

12       You understand that?

13       THE DEFENDANT:  Yes, sir.  I do.

14       THE COURT:  All right.  Do you have any -- we have a

15  forfeiture also.  Do you agree to the forfeiture?

16       THE DEFENDANT:  Yes, sir.  I have no interest in that

17  property myself personally, no.

18       THE COURT:  Fine.  How is your eye doing?

19       THE DEFENDANT:  I could use some glasses still.

20       THE COURT:  Yeah.  Okay.

21       Well, do you have any questions about anything now?

22       THE DEFENDANT:  No, sir.  I do not.

23       THE COURT:  Thank you.

24       We're all set then?

25       MR. MYGRANT:  I just want to -- I went through a

checklist, Your Honor, and the one thing I just want to make
sure the record reflected clearly was that there has been no
force, threats, or promises, other than those in the plea
agreement, that have been made to the defendant.

THE COURT:  Yeah.

That's correct.  Is that correct?

THE DEFENSE:  Yes.

THE COURT:  No force or promises.  You weren't talked
into --

THE DEFENDANT:  No, sir.  Nobody forced me to do
anything or promised me nothing.

THE COURT:  Yeah.  That's fine.

What's the supervised release?

MR. MYGRANT:  Yes.  Thank you, Your Honor.  That is
five years of supervised release and a $250,000 fine.

THE COURT:  And there is no parole in the federal
system.  It's supervised release.  As far as your sentence is
concerned, you don't get any early out.  You serve your time,
but you get for -- Bureau of Prisons can give you credit for, if
you behave yourself, for good behavior, but that's about it.

THE DEFENDANT:  I understand that, sir.

THE COURT:  Thank you.

Anything further for the government?

MR. MYGRANT:  No, Your Honor.  I did file that
preliminary order of forfeiture which I know Your Honor will

```
 1   sign, and I believe that covers it for today.
 2            Oh, the preliminary matter that Your Honor intended to
 3   do, as far as the courtroom was concerned --
 4            THE COURT:  We're -- that's moot.
 5            MR. MYGRANT:  Okay.
 6            THE COURT:  Thank you.
 7            MR. WARREN:  Thank you, Your Honor.
 8            THE DEFENDANT:  Thank you, Your Honor.  Have a good
 9   day.
10            THE COURT:  You bet.
11
12        (The proceedings concluded at 10:02 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                      C E R T I F I C A T E

2

3         I certify, by signing below, that the foregoing is a

4 true and correct transcript of the record, taken by stenographic

5 means, of the proceedings in the above-titled cause.  A

6 transcript without an original signature, conformed signature,

7 or digitally signed signature is not certified.

8

9         DATED this 1st day of August, 2019.

10

11

12                           *// Ryan White*
                                RYAN WHITE

13                                Registered Merit Reporter
                                Certified Realtime Reporter

14                                Expires 9/30/2019
                                Washington CCR No. 3220

15                                Expires 10/25/2019
                                Oregon CSR No. 10-0419

16                                Expires 12/31/2020

17

18

19

20

21

22

23

24

25